[No. A026850. First Dist., Div. Three. Feb. 28, 1986.]

SUCHAT SANGUANSAK, Plaintiff and Appellant, v.
DONALD C. MYERS et al.,
Defendants, Cross-complainants and Appellants;
GREAT WESTERN SAVINGS AND LOAN ASSOCIATION,
Defendant, Cross-defendant and Respondent.

**COUNSEL**

Stephen Gallenson and Chris P. Andrian for Plaintiff and Appellant.

Abbott, Johnston, Borin & Bryan, Jerry B. Abbott and Marilyn Kittleson for Defendants, Cross-complainants and Appellants.

Charles M. Sledd, Samuel R. Shusterman and James D. Sage for Defendant, Cross-defendant and Respondent.

**OPINION**

**MERRILL, J.**—On October 19, 1983, Suchat Sanguansak (appellant) filed a complaint for a temporary restraining order and preliminary and permanent injunctions to enjoin Donald C. Myers and Hyacinth S. Myers (Myers) from initiating a trustee sale of real property owned by appellant.

The court granted the temporary restraining order enjoining the institution of the trustee's sale and ordered Myers to appear in court on November 3, 1983, to show cause why the restraining order should not remain in effect during the pendency of the action. On November 3, 1983, pursuant to stipulation, the matter was placed on the calendar for hearing on January 11, 1984, with the restraining order to remain in effect until the matter was heard.

Appellant filed his first amended complaint on November 10, 1983. On November 23, 1983, Myers filed a cross-complaint against respondent Great Western Savings and Loan Association (Great Western) alleging breach of

contract and negligence in serving as a collection agent on a promissory note for Myers. On January 6, 1984, Great Western filed its answer to the cross-complaint.

The matter came on for trial on January 13, 1984. The trial court issued a tentative decision on February 28, 1984, holding that the subject transaction was not covered by Code of Civil Procedure section 2076 nor Civil Code section 1501. The court denied appellant's request for a permanent injunction, and awarded reasonable attorney's fees to Myers. The tentative decision further provided that Myers were not entitled to recovery on their cross-complaint against Great Western, since they had not been damaged by any negligence or breach of contract by Great Western.

On March 16, 1984, judgment was entered ordering (1) that appellant take nothing by way of his complaint against Myers, (2) that the temporary restraining order be dissolved, (3) that Myers take nothing by way of their cross-complaint against Great Western, and (4) that appellant pay to Myers reasonable attorney's fees and costs.

Appellant appeals from the judgment on the complaint in favor of Myers, and Myers appeal from the judgment which provides that they are to take nothing by way of their cross-complaint against Great Western.

I

On December 15, 1982, appellant Sanguansak, by his attorney-in-fact, Thongtam Somnurk, executed a promissory note secured by a deed of trust in favor of Myers, for the sum of $57,000. Ms. Somnurk testified that she was assisted in procuring the loan by an attorney at law. Under the terms of the note, appellant was to make monthly payments of interest only in the amount of $855 commencing on February 1, 1983, and continuing until January 1, 1985, at which time the entire unpaid principal balance was to become due. The note provided for a prepayment penalty of six months unearned interest on any amount paid in excess of 20 percent of the principal in any twelve-month period.

On January 5, 1983, Myers entered into a written agreement with Great Western which provided that Great Western would serve as a collection agent to receive payments on the promissory note.

After making one payment of $855 in January 1983, appellant's attorney-in-fact, Ms. Somnurk, contacted Great Western in order to pay the entire amount due on the note. On February 4, 1983, Ms. Somnurk, accompanied by John Giminski, who sometimes assisted her in financial affairs, went to

Great Western. She brought with her a $60,000 cashier's check. Ms. Somnurk testified that she spoke to Diane Howard, a Great Western branch representative, informed her that she wished to "pay off the loan" and asked her to determine the amount due. After speaking with her supervisor, Ms. Howard accepted the $60,000 check and gave Ms. Somnurk a receipt for $57,085.50, Great Western's assessment of the amount due on the note, and a check for $2,914.50. The payment accepted by Great Western did not include the prepayment penalty of six months unearned interest in the amount of $4,104. Neither Ms. Somnurk nor Ms. Howard discussed the prepayment penalty during this meeting.

Ms. Somnurk testified that she was "worried about this loan" and wanted to pay off the note before Mr. Giminski left town. She stated that although Mr. Giminski was present with her at the Great Western branch, he did not inform her of the prepayment penalty. In responding to questions from the court, Ms. Somnurk testified that had Great Western told her that she owed $60,000, she would have let the bank keep the full amount of the cashier's check. She further indicated that Mr. Sanguansak had another savings account from which Ms. Somnurk possibly could have acquired the necessary funds to satisfy a prepayment penalty had such a penalty been assessed on February 4, 1983. According to John Giminski's affidavit in support of the complaint for temporary restraining order and preliminary injunctions, appellant could have paid the prepayment penalty on February 4, 1983, but, as of October 19, 1983, he no longer had sufficient funds.

Great Western thereafter mailed three notices to Ms. Somnurk's residence: one on February 10, 1983, indicating a balance of zero owed; one on February 17, 1983, indicating a balance of $4,104 owed; and one on March 3, 1983, indicating the same balance. Both Ms. Somnurk and Mr. Giminski left town after paying off what they thought was the entire amount owed to Myers. Thus, neither Ms. Somnurk nor Mr. Giminski received the notices. Ms. Somnurk moved to Fresno, California, for seven months and Mr. Giminski flew back to his permanent residence in the Philippines for eight months. When Ms. Somnurk returned to Santa Rosa in August 1983, she moved to a different residence and never received any mail that was sent to her former address.

On June 2, 1983, as the promissory note had not been paid in full, Myers signed and recorded a notice of default on the deed of trust which secured the promissory note, and caused foreclosure proceedings to be instituted with respect to appellant's property. The sale was scheduled for October 19, 1983, but was prevented by the temporary restraining order obtained by appellant.

## II

Appellant contends that the acceptance of the tender of $57,085.50 without objection precludes Myers from raising any subsequent objection to the sufficiency of such tender. We disagree.

Appellant relies on Code of Civil Procedure section 2076 and Civil Code section 1501 to support his contention. Code of Civil Procedure section 2076 provides that: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards." Civil Code section 1501 further provides that: "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor, if not then stated."

These two code sections should be read together. (*Hind* v. *Oriental Products Co., Inc.* (1925) 195 Cal. 655, 663 [235 P. 438].) Case law has consistently held that the purpose of the above quoted sections is to allow a debtor who is willing and able to pay his debt to know what his creditor demands, so that the debtor may, if he wishes, make a conforming tender. (*Noyes* v. *Habitation Resources, Inc.* (1975) 49 Cal.App.3d 910, 914 [123 Cal.Rptr. 261, 82 A.L.R.3d 1192]; *Heimstadt* v. *Tapered Parts, Inc.* (1957) 155 Cal.App.2d 711, 714 [318 P.2d 689].)

Most of the decisions applying sections 2076 and 1501 rely on the doctrine of estoppel. (See *Hind* v. *Oriental Products Co., Inc., supra,* at p. 665.) These cases generally arise either where a creditor has refused a tender without specifying his reasons for the refusal or where he has accepted a tender without informing the debtor that the tender is nonconforming.

In *Hind* v. *Oriental Products Co., Inc., supra,* a defendant refused to accept plaintiff's tender of peanuts which it had ordered. The court held that the defendant was estopped, pursuant to Code of Civil Procedure section 2076 and Civil Code section 1501, from later claiming various grounds for its refusal of the tender which possibly could have been corrected by the plaintiff at the time of delivery. (*Hind* v. *Oriental Products Co., Inc., supra,* at p. 672.) The Supreme Court stated that the " 'opportunity' which the statute provides must be available to the objector would include of course such knowledge or such information . . . as would enable the person

whose rights were to be affected to act with intelligence in the protection or preservation of his rights." (*Id.*, at p. 664.)

The case of *Montgomery* v. *De Picot* (1908) 153 Cal. 509 [96 P. 305], involved an action for specific performance for the sale of real property brought by the plaintiff as the assignee of the buyer. When plaintiff tendered his note and mortgage to defendant seller, the seller flatly refused to accept it, and failed to specify the basis for his refusal. (*Id.*, at p. 511.) The Supreme Court held that defendant, pursuant to Code of Civil Procedure section 2076, was estopped from asserting any objection to the tender which could have been made at the time of the tender because if the objection had been asserted at the time of the tender, the plaintiff could have conformed at that time. (*Ibid.*)

Similarly, in *Riverside Fence Co.* v. *Novak* (1969) 273 Cal.App.2d 656 [78 Cal.Rptr. 536], plaintiff deposited funds in escrow pursuant to an option agreement between the parties for the purchase of certain real property. Defendant refused to sign the requisite escrow instructions to complete the sale and, despite plaintiff's repeated requests for a statement of defendant's objections, also refused to reveal why he would not approve the instructions. (*Id.*, at p. 660.) The court held that plaintiff was attempting in good faith to tender performance, and that, pursuant to sections 2076 and 1501, defendant was "precluded from [subsequently] asserting that there had not been a timely or proper exercise of the option." (*Id.*, at p. 663.) The court noted that "[t]he rationale of the requirement of specific objection is that the offeror should be permitted to remedy any defects in his tender; the offeree is therefore not allowed to remain silent at the time of the tender and later surprise the offeror with hidden objections [citation]." (*Id.*, at p. 662.)

Finally, in *Sheldon Builders, Inc.* v. *Trojan Towers* (1967) 255 Cal.App.2d 781 [63 Cal.Rptr. 425], plaintiff contractor accepted a check from defendant partnership for services rendered. Plaintiff did not deposit the check, but retained it without notifying defendant that he would not accept the check as payment in full. (*Id.*, at p. 788.) In determining whether plaintiff had received payment for services rendered, the court held that under sections 2076 and 1501 plaintiff was estopped from claiming that he had not been paid in full because he had accepted defendant's check without complaint and with full knowledge that the check was nonconforming. (*Ibid.*)

It is evident that sections 2076 and 1501 and the cases relying on these statutory provisions are not applicable to the case at bench. A review of the cases shows that sections 2076 and 1501 are primarily intended to protect

debtors/offerors who perform or tender performance in good faith from harm by creditors/offerees who refuse to accept or intentionally fail to demand proper tender.

In the instant case, Myers neither refused to accept nor intentionally failed to demand proper tender from appellant's attorney-in-fact, Ms. Somnurk. This is not a case where the offeree "remain[ed] silent at the time of tender and later surprise[d] the offeror with hidden objections. [Citation.]" (*Riverside Fence Co.* v. *Novak, supra,* 273 Cal.App.2d at p. 662.) Rather, Myers' failure to obtain the prepayment penalty was the result of a mistake which their agent attempted to correct by immediately sending notice to appellant's attorney-in-fact.

It is clear that Myers and their agent, Great Western, acted in good faith throughout this transaction. Upon discovery of the mistake, Great Western promptly sent notice to the address provided by appellant's attorney-in-fact. Myers cannot be held responsible for the fact that there was no one at the address to receive the notice. Under these circumstances, they did everything in their power to rectify the error. Appellant, through his attorney-in-fact, knew or should have known of the deficiency of the tender because the prepayment charge was clearly stated in the promissory note. With such knowledge appellant is not justified in claiming that he relied on Myers' mistake.

We therefore hold that Myers are not precluded from objecting to the sufficiency of appellant's tender under the promissory note. To hold otherwise would allow appellant to unfairly profit from Myers' mistake.

### III

Appellant further contends that Myers are equitably estopped from relying on the debt of $4,104, plus accrued interest, as a basis for instituting foreclosure proceedings. We reject this contention.

In *Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264], the Supreme Court stated that the doctrine of equitable estoppel "is founded on concepts of equity and fair dealing [and] provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." The court stated that four elements must be present in order for the doctrine to apply: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or he must so act that the party asserting estoppel has the right to believe it was so intended; (3) the other party must be ignorant

of the true state of the facts; and (4) he must rely upon the conduct to his detriment. (*Ibid.*)

■ In this instance, it is clear that appellant was not "ignorant of the true state of the facts." Ms. Somnurk, acting on behalf of appellant, executed the note, with advice of legal counsel, and made the payment to Great Western. The terms of the prepayment penalty were clearly set forth in the promissory note. Appellant may not now be heard to complain that he was ignorant of the prepayment penalty. In addition, appellant had not as yet suffered any detriment when Great Western sent the correct information to Ms. Somnurk. The obligation could have been satisfied at that time by the payment of the same amount as was properly due when Ms. Somnurk tendered payment at the office of Great Western. Accordingly, Myers are not equitably estopped from relying on this debt as a basis for instituting foreclosure proceedings.

## IV

Myers have asked that we hold Great Western liable on their cross-complaint in the event that we reverse the judgment of the superior court denying appellant injunctive relief. Because we affirm the lower court's judgment in favor of Myers on the complaint, we do not address this issue.

The judgment on the complaint and cross-complaint is affirmed. Myers are awarded costs on appeal from appellant in the action on the complaint. Great Western is awarded costs on appeal from Myers in the action on the cross-complaint.

Scott, Acting P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied March 25, 1986.