[No. B035346. Second Dist., Div. Five. June 14, 1989.]

JACK ALLEN THOMPSON, Plaintiff and Appellant, v.
HAL W. WILLIAMS, JR., et al., Defendants and Respondents.

COUNSEL

Roslyn J. Stewart for Plaintiff and Appellant.

Baker, Silberberg & Keener and David C. Anderson for Defendants and Respondents.

OPINION

ROWEN, J.*—Plaintiff and defendant are both lawyers. Plaintiff, Jack Allen Thompson (Thompson), brought the present action to recover a referral fee pursuant to an agreement he had with defendant, Hal W. Williams, Jr. (Williams), individually, and as agent for defendant Pollack Lintz Williams, Inc. (Pollack Lintz Williams), a law corporation. In pretrial discovery, Thompson's deposition was taken in this case and in another independent, but related, matter. Based upon evidence obtained thereby, defendant Williams moved for summary judgment on the grounds that an accord and satisfaction sufficient to establish a complete defense to the plaintiff's complaint against him had been shown and, as a result thereof, there remained no triable issues of fact to be determined. The trial court granted Williams's motion and entered judgment in favor of said defendant. From such judgment, plaintiff appeals. We affirm the trial court's order and judgment.

I

On November 8, 1980, Vito Coletta and Julia Coletta received serious and permanent injuries resulting from an accident when the jeep vehicle in which they were riding flipped over. Julia Coletta was paralyzed from the neck down. Vito Coletta suffered injuries, primarily to his back, which he alleged left him totally disabled. Vito and Julia's son, Matthew, was alleged to have suffered injuries in that same accident. Within two weeks of the date of the accident, Vito Coletta consulted with Thompson who referred him and the other injured members of his family to Williams. On December 24, 1980, Vito Coletta, individually and on behalf of his wife, Julia, and son, Matthew, signed a retainer agreement with Lintz, Williams & Rothberg, a professional corporation, and predecessors to Pollack Lintz Williams. The retainer agreement provided, inter alia, for an attorney's fee of 45 percent of all amounts recovered, whether by compromise or verdict, if obtained after suit or demand for arbitration had been filed. On January 12, 1981, Williams wrote to Thompson advising "This is to confirm that I will handle the

---

* Assigned by the Chairperson of the Judicial Council.

above matter [*Coletta* v. *American Motors, et al.*] and you are to receive an associate fee of ⅓ of the attorneys fee."

At the time, Thompson's own practice consisted of tax, corporate, estate planning, probate matters and personal injury cases, which though taking up less than one-half of his working time, provided him with approximately 50 percent of his income. He had, however, never tried a personal injury case to conclusion. Thompson knew that he was not competent to handle the Coletta jeep roll-over case without the assistance of someone like Williams. Thompson had previously referred other personal injury matters to Williams and to other members of Williams's law firm. Those referrals were made on the understanding, almost always oral, that Thompson would receive one-third of the legal fees earned.

Williams settled the Coletta family's combined claims for $1 million ($790,000 for Julia, $200,000 for Vito and $10,000 for Matthew). On January 13, 1984, Vito and Matthew Coletta executed a settlement distribution form which reimbursed Thompson approximately $49,000 for costs advanced by his law office in prosecuting their lawsuit and approved attorney's fees of $450,000 (45 percent of $1 million).

Immediately after settlement of the Coletta lawsuit was concluded, Williams reneged on his referral fee agreement with Thompson. Williams's legal assistant, Gerald Owen Ryckman, Jr., telephoned Thompson and advised him that his portion of the legal fees earned in the matter would be $90,000. Thompson objected and, after learning that Williams had received a fee of $450,000, demanded $150,000. Williams refused and negotiations between the parties over the amount of the referral fee began.

The parties "haggle[d]" and "dickered" over their respective positions, each side moving a bit from their original offers and demands. Finally, Williams offered $114,000 with the admonition that Thompson "take it or leave it," and that "the top is $114. If you don't like it, sue me." Thompson accepted the $114,000 (paid in two checks, $90,000 and $24,000) and subsequently brought this action for $36,000 he claims to be still due him.

II

■ The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].) The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary

judgment should be resolved against granting the motion. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 437-439 [74 Cal.Rptr. 895, 450 P.2d 271]; *Mann* v. *Cracchiolo, supra,* 38 Cal.3d at pp. 35-36.)

■ Summary judgment is properly granted where the evidence in support of the moving party is sufficient to establish a complete defense to plaintiff's claims and there are no triable issues of fact to be determined. (*Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 362 [178 Cal.Rptr. 783, 636 P.2d 1121]; *Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) ■ A motion for summary judgment is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse thereof, the exercise of that discretion will not be disturbed on appeal. (*Hicks* v. *Bridges* (1957) 152 Cal.App.2d 146, 148 [313 P.2d 15].) An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial court. (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615 [103 P.2d 1018].) The issue on appeal before this court, therefore, is whether the trial court abused its discretion in granting the summary judgment motion. (*Hicks* v. *Bridges, supra,* 152 Cal.App.2d 146, 148.)

## III

■ Defenses of release or accord[1] and satisfaction[2] may be decided by summary judgment. (*Ramos* v. *City of Santa Clara* (1973) 35 Cal.App.3d 93, 96 [110 Cal.Rptr. 485].)

■ For the affirmative defense of accord and satisfaction to apply in disposition of an unliquidated claim, the defendant must establish: (1) that there was a "bona fide dispute" between the parties, (2) that the debtor made it clear that acceptance of what he tendered was subject to the condition that it was to be in full satisfaction of the creditor's unliquidated claim, and (3) that the creditor clearly understood when accepting what was tendered that the debtor intended such remittance to constitute payment in full of the particular claim in issue. (*Potter* v. *Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592 [234 P.2d 16].) A writing is not essential to an accord and satisfaction; it may be implied. (1 Witkin, Summary of Cal. Law (9th ed. 1986) Contracts, § 900, p. 806.) The rule of *Potter* v. *Pacific Coast Lumber*

---

[1] Accord is defined in Civil Code section 1521 as ". . . an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled."

[2] Satisfaction is defined in Civil Code section 1523 as the "Acceptance, by the creditor, of the consideration of an accord" which "extinguishes the obligation, . . ."

*Co.* continues to be the law of this state. (*Connecticut Printers, Inc.* v. *Gus Kroesen, Inc.* (1982) 134 Cal.App.3d 54, 61 [184 Cal.Rptr. 436].)

## IV

■ After reviewing the evidence before it, and without condoning Williams's conduct, the trial court found that a bona fide dispute between the parties existed. Such finding was justified. There was no abuse of the exercise of the trial court's discretion.

Both Williams, in his March 17, 1988, declaration accompanying his motion for summary judgment and Thompson in his January 6, 1988, deposition in an independent,[3] but related matter, agreed that, as a part of the referral fee agreement, Thompson had obligated himself to work on the case and to participate in its preparation for trial. Williams swore, further, that Thompson had agreed to contribute to the cost of preparing and trying the case. Williams declared that, as the pretrial costs and work mounted up, he informed Thompson, in the later part of 1983, that Thompson should either contribute to the work or costs or reduce the amount of the referral fee due him, and that, as a result thereof, Thompson agreed to leave the amount of the referral fee "open."

In his March 18, 1986, deposition in the instant matter, Thompson denied an agreement to contribute to the costs of prosecuting the action but admitted that, within six to nine months prior to the ultimate resolution of the matter, he had informed Williams that he would be agreeable to reducing his referral fee percentage if it were necessary for Williams to bring in another attorney, expert in jeep roll-over cases, to try the matter. In the end, the only work that Thompson did do in the case was to aid in the preparation of declarations by Vito and Julia Coletta in support of a motion to specially set the case for an early trial date. Thompson contributed nothing toward the costs incurred to prosecute the action.

These opposing positions formed the foundation for the dispute that later arose over the amount of the referral fee due Thompson and was the basis for the negotiations between the parties that followed. ■ The purpose of a motion for summary judgment is "to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues." (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) The court resolves the question of triable issues by examining "support[ing] or oppos[ing] . . . affidavits, declarations, admissions, answers to interrogatories, depositions and matters of

---

[3] Julia Coletta, et al. v. Hal W. Williams, Inc., et al., (L.A. Super. Ct. case No. C591803).

which judicial notice . . . may be taken . . . [which] set forth admissible evidence, . . ." (Code Civ. Proc., § 437c.) Here, the trial court did just that and concluded that "there was a dispute," and that the bargaining entered into between the parties, "which is evidenced by the discussions which Thompson testified to in his deposition" established Thompson's recognition of the dispute.

■ It matters not that there was no solid foundation for the dispute as the test is whether the dispute was honest or fraudulent. (*B. & W. Engineering Co.* v. *Beam* (1913) 23 Cal.App. 164, 171 [137 P. 624]; *Potter* v. *Pacific Coast Lumber Co., supra,* 37 Cal.2d 592, at p. 597.) ■ There was nothing presented to the trial court to demonstrate that the dispute between the parties here was fraudulent.

## V

The second element necessary for the accord and satisfaction defense was similarly established. The trial court's conclusion that Williams made it clear to Thompson that acceptance of what he tendered was subject to the condition that it would be in full satisfaction of Thompson's claim regarding the referral fee due him is fully supported by Thompson's own deposition testimony. Afterward, Thompson, in his May 5, 1988, declaration accompanying his opposition to the motion for summary judgment, sought to counter those admissions and to raise triable issues of fact. The trial court rejected that attempt. At the time Thompson made his admissions in deposition no objection to the questions was made, nor was there any effort by Thompson to subsequently amend his answers. Indeed, it was only after Williams filed a motion for summary judgment raising the accord and satisfaction defense that Thompson filed a self-serving declaration, seeking to avoid the consequences of his prior admissions.

■ Admissions against interest have high credibility value, particular when, as here, they are made in the context of proceedings designed to elicit the facts. "Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of *fact* (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits." (Italics added; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10]; *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376 [121 Cal.Rptr. 768].) After-the-fact attempts to reverse prior admissions are impermissible because a party cannot rely on contradictions in his own testimony to create a triable issue of fact. (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567 [142 Cal.Rptr. 716]; *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150

[144 Cal.Rptr. 794].) The assertion of facts contrary to prior testimony does not constitute " 'substantial evidence of the existence of a triable issue of fact.' " (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1.)

Here, Thompson initially demanded $150,000. Williams insisted that $90,000 was the amount agreed upon. There was a series of telephone calls between the parties. They "went into a haggle type of thing, . . ." They negotiated. Thompson lowered his demand and Williams raised his offer. Eventually, they arrived at a settlement figure "by dickering back and forth" and the matter was "settled" at $114,000.

At the time Williams made his last offer, he gave notice that: "that's all you are going to get, Buddy, . . ." and advised Thompson to either accept the tendered amount or sue him, i.e., "He [Williams] said, 'Thompson, the top is $114. If you don't like it, sue me.' " Thompson acknowledged that $114,000 was all Williams was going to pay him and that he (Thompson) could either "take it or leave it." Williams's final tender offer was made in clear and unequivocal terms, the offer was made in full settlement of the disputed amount and it called for acceptance upon those precise conditions. (*Potter* v. *Pacific Coast Lumber Co., supra,* at p. 598.)

## VI

Finally, Thompson's own deposition testimony, once again, provides the court with evidence to satisfy the last element necessary to establish the defense of accord and satisfaction, i.e., that the creditor clearly understood when accepting the tendered negotiated amount that such monies were intended to constitute payment in full of the particular claim the creditor was making. Williams advised Thompson that $114,000 was all that he was going to get and if Thompson didn't find it acceptable he should reject the final offer made and sue Williams for what he felt was due him. When Thompson inquired of Williams as to whether or not that was his "final say" he was advised that it was. Thompson responded with "Fine, I'd like to pick up the money now" and he did. In such circumstances, Thompson's acceptance of the proffered checks, which he subsequently cashed, amounted in legal effect to an agreement that his claim be thereby compromised and settled. (*Potter* v. *Pacific Coast Lumber Co., supra,* at p. 599; also *Russell* v. *Riley & Peterson* (1927) 82 Cal.App. 728, 737-738 [256 P. 557].) Any uncommunicated mental reservations Thompson may have had about accepting the final offer tendered by Williams does not militate against the validity of the accord and satisfaction. (*Potter* v. *Pacific Coast Lumber Co., supra,* at p. 599; *Creighton* v. *Gregory* (1904) 142 Cal. 34, 41 [75 P. 569].)

Thompson was bound either to reject the checks tendered by Williams or, by accepting them, to accede to Williams's terms that the same were in full

settlement of Thompson's referral fee claim. (*Sheldon Builders, Inc.* v. *Trojan Towers* (1967) 255 Cal.App.2d 781, 788 [63 Cal.Rptr. 425].) Reasonably viewed, accepting the payment of the final amount on the express "take it or leave it" terms upon which it was offered evidenced Thompson's intent to accede to Williams's terms. Thompson could not accept the benefit and reject the condition. (*Johnston* v. *Burnett* (1911) 17 Cal.App. 497, 501 [120 P. 436]; *Potter* v. *Pacific Coast Lumber Co., supra,* 37 Cal.2d at p. 599.)

## VII

Strangely enough, even after Williams allegedly stiffed Thompson out of $36,000, Thompson continued to refer other cases to Williams. Thompson also continued to brood over the balance he felt was due him on the Coletta referral. As a result he would periodically bring the Coletta referral fee matter up with Williams, either in person or on the telephone, whenever he felt it appropriate to do so. Thompson now argues that the conduct of both parties after the receipt of the $114,000 from Williams demonstrated that neither of them intended that sum to be in full settlement of Thompson's referral fee claim. That conclusion is not supported by Thompson's own deposition testimony.

Thompson testified that Williams's response to Thompson's postsettlement pleas were either "we will see," or "I'll think about it." Evidence of such conversations does not strengthen Thompson's position. Logically considered, they simply show that while Thompson persisted in his efforts to attempt to collect additional monies from Williams, Williams remained firm and unrelenting in his position, other than to make somewhat equivocal statements intending not to offend a continuing referral source of business for him. Nothing that Williams is alleged to have said in response to Thompson's doleful inquiries amounted to an acknowledgement of a continuing obligation or an admission that any additional sums were due Thompson. (*Potter* v. *Pacific Coast Lumber Co., supra,* at p. 599.)

## VIII

Lastly, Thompson complains that the trial court erred when it entered its summary judgment order against him on the entire matter. He argues that his first amended complaint has numerous causes of action in addition to the cause of action for breach of contract and that defendant's motion for summary judgment failed to present any evidence to sustain its burden that Thompson's claims for fraud, intentional and tortious interference with prospective business advantage or breach of the implied covenant of good faith and fair dealing in fiduciary obligations were entirely without merit.

Appellant is incorrect. All of Thompson's causes of action were premised on the efficacy of his breach of contract claim. The accord and satisfaction between Thompson and Williams resolved not only the contract dispute between those parties but all other claims that Thompson may have had against Williams arising out of that theory of recovery. Having found that an accord and satisfaction had been established, the trial court was correct in granting defendant's motion for summary judgment on all causes of action in the complaint alleged against the defendant. (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 956 [199 Cal.Rptr. 789].)

The order and judgment granting the motion for summary judgment as to all of plaintiff's causes of action against this defendant is affirmed.

Lucas, P. J., and Boren, J., concurred.