Filed 4/25/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARTHA L. WELBORNE, | B283656 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC552464) |
| v. | |
| RYMAN-CARROLL FOUNDATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John P. Doyle, Judge.  Reversed.

Pick & Boydston, Brian D. Boydston for Plaintiff and Appellant.

Larson O'Brien, Stephen G. Larson, Paul A. Rigali, Ariana E. Fuller for Defendant and Respondent.

_____

Martha L. Welborne (Welborne) sued Ryman-Carroll Foundation (Ryman) and others in an attempt to recover $490,108.16 which she claimed had been taken by her then-investment advisor, defendant Mark Foster (Foster), from Welborne's investment account at her investment advisory firm which Foster then used to repay a loan which an entity he controlled had obtained several years earlier from Ryman.

We hold that Welborne presented a sufficient prima facie case to require that Ryman's motion for summary judgment be denied.  Accordingly, we reverse the judgment.[1]

## FACTUAL AND PROCEDURAL HISTORY

Between 1980 and 2014, Foster was a registered investment advisor; during most of the time at issue, he worked at Stern Fisher Edwards, Inc. (SFEI).[2]  Welborne and Ryman were among his clients.  Until August 2012, Foster was a member of the board of directors of Ryman.  He was also the sole member and director of the Moira Byrne Foster Foundation (MBFF).  In 2004, Ryman obtained a bank line of credit with a minimum draw amount of $500,000.  In turn, Ryman loaned $410,000 of that amount to MBFF.  Foster executed the note memorializing this loan on behalf of MBFF.  Although the note called for quarterly payments, after approximately March 2011, payments stopped, placing the note in default.  In the spring of 2012,

[1]     In *Welborne v. SFE Investment Counsel, Inc*., B281957, a companion case filed today, we affirm the judgment dismissing SFE Investment Counsel, Inc. as a party to the Los Angeles Superior Court action from which both appeals are taken (LASC No. BC552464).

[2]     SFEI and SFE Investment Counsel, Inc. have similar names but are distinct legal entities.

2

Ryman learned that Foster was no longer working at SFEI and had resigned from his position at two limited liability companies. It also learned that the Financial Industry Regulatory Authority (FINRA) had opened an investigation into activities by Foster and SFEI. Having learned of this information, Ryman demanded Foster's resignation from its board of directors. Ryman also began an investigation of the circumstances of Foster's resignations, learning that SFEI was unable to account for $630,000 of Ryman's investments there. In March 2013, Ryman made demand on MBFF and Foster for repayment of the note, together with accrued and unpaid interest. Following negotiations among counsel for the parties, in June 2013, Foster executed a written settlement agreement on behalf of himself and MBFF pursuant to which Foster agreed to pay Ryman $483,775.58 plus interest due on a margin account which Ryman also maintained.[3] Using wire transfer instructions on which Foster forged Welborne's signature, he transferred $495,000 from one of her accounts to MBFF. Once the funds were in the MBFF account, Foster arranged for payment in full of his monetary obligation under the settlement agreement. Ryman used these funds to pay off its margin account debt at SFEI. Ryman had not told or suggested to Foster from what source he might obtain funds to satisfy his monetary obligation under the settlement agreement, nor did Ryman ever inquire as to the source of the funds Foster had used to satisfy that obligation.[4]

---

[3] MBFF had no monetary obligation under the settlement agreement.

[4] Although in its separate statement of material facts, Ryman claimed—and Welborne agreed—that Ryman did not

3

Welborne sued Foster, Ryman, MBFF and others, seeking to recover the money Foster had taken without her permission from her account, filing her second amended complaint on November 21, 2016.  Against Ryman she alleged claims for aiding and abetting conversion (second cause of action), aiding and abetting breach of fiduciary duty (fourth cause of action), and quasi-contract (fifth cause of action).  Ryman denied her allegations and filed its motion for summary judgment, or in the alternative, summary adjudication, on February 24, 2017.  In her April 27, 2017 opposition to that motion, Welborne conceded that her second and fourth claims for relief were not sustainable.  Instead, she argued that there were sufficient disputed facts to warrant trial on her quasi-contract claim.

The trial court granted Ryman's motion for summary judgment on June 1, 2017, noting in its ruling that Welborne had conceded that it was "undisputed" that "there is no evidence to establish that [Ryman] had any knowledge of [Foster's] wrongdoing."  Welborne filed this timely appeal.

## CONTENTIONS

Welborne contends the trial court erred in granting summary judgment to Ryman on her quasi-contract claim because "the facts clearly establish that [Ryman] had every reason to suspect that the money Foster mysteriously produced [to pay the amount due under the settlement agreement] was ill-gotten."  From this characterization of the facts, Welborne argues (1) there was a dispute as to the facts that precluded the trial

---

have knowledge that Foster "may have" used Welborne's money to discharge his settlement obligation to Ryman until December 2013, Ryman had been aware that there was "an association" between Welborne and Foster prior to 2012.

4

court from granting summary judgment, or, in the alternative (2) it was nevertheless "unjust to allow [Ryman] to keep all of . . . Welborne's stolen money."

## **DISCUSSION**

### **A. Standard of review**

On appeal from a grant of summary judgment, we review the record and the ruling of the trial court de novo. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) We consider all the evidence presented by the parties in connection with the motion, except that which was properly excluded, and all uncontradicted inferences that the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) However, "[w]e do not resolve conflicts in the evidence as if we were sitting as the trier of fact. [Citation.] Instead, we draw all reasonable inferences from the evidence in the light most favorable to the party opposing summary judgment. [Citation.]" (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 961.)

A grant of summary judgment is proper if the evidence shows there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see also *Guz*, *supra*, 24 Cal.4th at p. 334.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted (*Aguilar*).)

There are two burdens applicable to a motion for summary judgment. The first is the burden of persuasion. A party moving for summary judgment, "bears the burden of persuasion that

5

there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law.  That is because of the general principle that a party who seeks a court's action in [its] favor bears the burden of persuasion thereon.  [Citation.]  There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra,* 25 Cal.4th at p. 850, fns. omitted.)

"Thus, a plaintiff bears the burden of persuasion that 'each element of ' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto.  [Citation.]  A defendant bears the burden of persuasion that 'one or more element of ' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto.  [Citation.]" (*Aguilar, supra*, 25 Cal.4th at p. 850.)

The second burden concerns the production of evidence. "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar, supra,* 25 Cal.4th at p. 850.)

"A burden of production entails only the presentation of 'evidence.'  [Citation.]  A burden of persuasion, however, entails the 'establish[ment]' through such evidence of a 'requisite degree of belief.'" (*Aguilar, supra,* 25 Cal.4th at p. 850.)  "A prima facie showing is one that is sufficient to support the position of the

6

party in question.  [Citation.]  No more is called for." (*Id*. at p. 851.)

### B.  Relevant legal principles of quasi-contract

A cause of action for quasi-contract invokes consideration of equitable principles, rather than of contract.  "'. . . [It] is an *obligation* . . . created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to [its] former position by return of the thing or its equivalent in money.  [Citations.]'" (*Unilab Corp. v. Angeles-IPA* (2016) 244 Cal.App.4th 622, 639; 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 1050; Rest.2d Contracts, § 4, com. b, p. 56.) The doctrine focuses on equitable principles; its key phrase is "'unjust enrichment,'" which is used to identify the "transfer of money or other valuable assets to an individual or a company that is not entitled to them." (Rest.3d Restitution and Unjust Enrichment, Foreword, vol. 1, p. XIII.)

In applying the principles of unjust enrichment, we do so to determine whether a plaintiff is entitled to restitution of the amount at issue.  (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1663 (*Perry*).)  "An individual is required to make restitution if he or she is unjustly enriched at the expense of another.  [Citations.]  A person is enriched if the person receives a benefit at another's expense.  [Citation.]" (*Perry, supra*, at p. 1662, citing Rest., Restitution, § 1, com. a; *California Federal Bank v. Matreyek* (1992) 8 Cal.App.4th 125, 131.)  "The fact that one person benefits another is not, by itself, sufficient to require restitution.  The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." (*Perry, supra*, at p. 1663, citing Rest., Restitution, *supra,* § 1,

7

com. c.) "[A] bona fide purchaser is generally not required to make restitution. (Rest., Restitution, *supra*, § 13.) [¶] . . . [However,] a transferee with knowledge of the circumstances giving rise to an unjust enrichment claim may be obligated to make restitution. For example, 'A person who has entered into a transaction with another under such circumstances that, because of a mistake, he would be entitled to restitution from the other, . . . [¶] (b) is entitled to *restitution from a third person who had notice of the circumstances before giving value or before receiving title or a legal interest in the subject matter*.' (Rest., Restitution, *supra*, § 13.)" (*Perry, supra*, at p. 1663, original italics.) In *Perry*, the court of appeal reversed, returning the case to the trial court so that the plaintiff would "be given an opportunity to amend its complaint to allege [] knowledge [there of an improper conveyance by the defendant]." (*Id.* at pp. 1669-1670.)

Similarly, when the thing at issue is money, the person who *innocently* accepts money from a thief or embezzler is not a converter at all and is not liable to the original owner. (*Kelley Kar Co. v. Maryland Cas. Co.* (1956) 142 Cal.App.2d 263, 264 (*Kelley*), citing *State Nat. Bank v. United States* (1885) 114 U.S. 401, 409-410; cf. *Swim v. Wilson* (1891) 90 Cal. 126, 130-131.) Conversely, the recipient of money *who has reason to believe* that the funds he or she receives were stolen may be liable for restitution. (*Kelley, supra,* at p. 264.)

"A transferee who would be under a duty of restitution if he had knowledge of pertinent facts, is under such duty if, at the time of the transfer, he suspected their existence." (Rest., Restitution, § 10.)

## C. Application of principles

In the separate statement in support of its motion, Ryman relied upon a series of undisputed facts to meet its burden to produce sufficient evidence to establish a prima facie showing that there were no triable issues of material fact. (See *Aguilar, supra*, 25 Cal.4th at p. 850.) Among these were the following, each of which Welborne conceded was undisputed: "Foster did not make any representation to [Ryman]'s attorneys regarding the source of the funds that he ultimately used to satisfy his obligations under the Settlement Agreement"; "[Ryman] never suggested or implied that Foster should obtain the money used to pay the settlement proceeds from any particular source in any particular manner, including by committing an unlawful or tortious act, . . . including using funds entrusted to him by [] Welborne"; and "[Ryman] did not have any knowledge that Foster may have used [] Welborne's money to pay his settlement obligations until John Welborne contacted [Ryman] . . . in or about December 2013."

The foregoing were among the facts that fully supported shifting the burden to Welborne to adduce facts to establish a prima facie showing that a triable issue of material facts exists. (*Aguilar, supra*, 25 Cal.4th at p. 850.) As *Aguilar* makes clear, in successfully defeating a defense motion for summary judgment, the plaintiff's burden is to make such a prima facie showing. And, *Aguilar, supra*, instructs us that "A prima facie showing is one that is sufficient to support the position of the party in question. (Cf. Evid. Code, § 602 [stating that a 'statute providing that a fact or group of facts is prima facie evidence of another fact establishes a rebuttable presumption'].) No more is called for." (*Aguilar, supra,* at p. 851.) Ryman met this test. Thus,

9

Welborne's responding party's burden was to adduce facts *disputing* those proffered by Ryman, not to *disprove* the facts Ryman had presented.

To meet its responding party's burden, Welborne submitted a Separate Statement of Additional Undisputed Material Facts that together with its accompanying declarations, established the following facts, *prima facie*: Ryman was aware that, in 2011, Foster had ceased making payments on the loan Ryman had made to MBFF; Ryman learned by August 2012 that Foster had been terminated by the brokerage firm at which he worked; Ryman established a special committee to investigate Foster's conduct and termination; Ryman learned that Foster and the brokerage firm were being investigated by FINRA and that Foster had stolen $630,000 from Ryman and had stolen other sums from other clients of the brokerage firm; Foster transferred $490,108.16 to meet his monetary obligation under the settlement agreement with Ryman; Ryman never asked Foster about the source of the funds he used to pay the settlement

amount;[5] and Ryman was aware that Foster and Welborne were "associated . . . in some way."[6]

The gravamen of Welborne's appeal is that these facts are prima facie evidence that Ryman was on notice and had a duty to inquire about the source of funds Foster used to discharge his monetary obligation under the settlement agreement, and, had Ryman either utilized the knowledge its special committee had acquired, or with the information then in its possession, inquired further, it would have determined earlier that Foster had purloined from Welborne the funds used to satisfy his payment obligation under the settlement agreement. Having established that Foster had done so, Welborne would also establish that Ryman was not an innocent transferee, and thus the trial court would be called upon to determine whether it was equitable to restore to Welborne the amount taken by Foster from her accounts to pay his obligation to Ryman.

---

[5] The underlying note which Foster signed on behalf of MBFF and the Settlement Agreement were placed in evidence by Ryman as part of its moving party's burden. In its reply memorandum in the trial court, Ryman argued that only MBFF was obligated to repay Ryman and that MBFF was not a party to the settlement agreement, citing SUF No. 18. However, while both Foster and MBFF are parties to the settlement agreement, its paragraph 2.b. clearly obligates only *Foster* to pay Ryman $483,775.58 plus interest.

[6] Ryman's trial court response to Welborne's submission of these additional material facts was to consider many of them "irrelevant" to determination of the motion, also challenging the wording of some and disputing a few. We do not agree that these additional undisputed material facts are irrelevant.

In this regard, we note that Ryman's reliance on *Kelley*, *supra*, 142 Cal.App.2d at page 264, and cases cited therein, is misplaced. The rule discussed in these cases is that the "[o]ne who receives stolen money *in good faith* and for good consideration will prevail over the unfortunate victim of the thief" (*ibid*., emphasis added) only applies when there is a determination that the recipient accepted the money *in good faith*. And, while a bona fide purchaser is generally not required to make restitution, "a transferee with knowledge of the circumstances giving rise to an unjust enrichment claim may be obligated to make restitution."[7] (*Perry, supra*, 11 Cal.App.4th p. 1663; Rest., Restitution, *supra*, § 13.)

Welborne has sufficiently placed material facts—the extent of Ryman's knowledge and of its good faith—in issue; thus, the

---

[7] In *Kelley*, the court also stated, "Of course, if such purchaser should have paid an unreasonably low price for the article acquired, or if by any other means he was put on such notice as a reasonably prudent man would have interpreted to be tantamount to a declaration by the thief that the chattel had been purchased with stolen money, he cannot retain the movable against the innocent victim of the robber." (*Kelley, supra,* 142 Cal.App.2d at p. 265; see also *Perry, supra*, 11 Cal.App.4th at pp. 1667-1668 ["a transferee with knowledge of the circumstances giving rise to an unjust enrichment claim may be obligated to make restitution"].) (*Perry, supra*, at p. 1663.)

We observe that the principle that one with notice may have a duty of further inquiry applies whether the subject is a "moveable," as in *Kelley*, or cash, as in the present case. (See, *Perry, supra*, 11 Cal.App.4th at p. 1663.)

matter requires trial rather than summary disposition.[8]  That is, Welborne made a sufficient prima facie showing to support her claim for recovery.  As *Aguilar* makes clear, "[n]o more is called for."[9]  (*Aguilar, supra*, 25 Cal.4th at p. 851.)

---

[8]  Ryman also errs in its claim that this matter may not be tried to a jury.  The gist of an action in which a party seeks only money damages is legal in nature even though equitable principles are to be applied.  (*Paularena v. Superior Court of San Diego County* (1965) 231 Cal.App.2d 906, 912.)  As appellant argues, this is an express holding of *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 728.  (See also, *Jogani v. Superior Court* (2008) 165 Cal.App.4th 901, 909.)

[9]  We recognize that Ryman changed its position by paying off its own obligation to the brokerage firm after receiving payment from Foster.  However, as noted in the text, *ante*, that action may not have been well considered given the information in Ryman's possession concerning Foster's defalcations prior to it making that payment.

## DISPOSITION

The June 1, 2017 judgment is reversed. Appellant shall recover her costs on appeal.

## CERTIFIED FOR PUBLICATION.

_____, J.*
GOODMAN

We concur:

_____, Acting P.J.
ASHMANN-GERST

_____, J.
CHAVEZ

---

\* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14