Filed 6/22/21  Nicholson v. Southern California Edison CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| JASON NICHOLSON et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>SOUTHERN CALIFORNIA EDISON CO.,<br><br>Defendant and Respondent. | B302287<br><br>(Los Angeles County<br>Super. Ct. No. BC655801) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Reversed.

Parris Law Firm, Alexander R. Wheeler, Jonathan W. Douglass and Ellery S. Gordon for Plaintiffs and Appellants.

LimNexus, Irwin S. Evans, David D. Yang; Leon Bass, Jr. and Carla Margolis Blanc; Greines, Martin, Stein & Richland, Robin Meadow, Cynthia E. Tobisman, and Eleanor S. Ruth for Defendant and Respondent.

# INTRODUCTION

Southern California Edison Company (SCE) hired Hampton Tedder Electric Company to perform maintenance on an underground residential distribution switch, known as a BURD switch, owned by SCE. During the job there was an electrical arc flash that burned two Hampton Tedder employees, Jason Nicholson and Alim Hafiz. Nicholson and Hafiz sued SCE, asserting causes of action for negligence and for violation of a statute in the Public Utilities Code. The trial court granted SCE's motion for summary adjudication on each of Nicholson and Hafiz's causes of action and, therefore, summary judgment. The court ruled Nicholson and Hafiz failed to raise a triable issue of material fact on whether SCE caused the arc flash and therefore contributed to Nicholson's and Hafiz's injuries. Because SCE did not meet its initial burden to show it did not contribute to Nicholson's and Hafiz's injuries, and because (even if it had) Nicholson and Hafiz created triable issues of material fact, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *SCE Hires Hampton Tedder To Perform Maintenance on a BURD Switch*

SCE hired Hampton Tedder to perform electrical line maintenance as needed. In a contract titled "Master Services Agreement," Hampton Tedder agreed to "assume[ ] all risks pertaining to performing [s]ervices" at jobsites and to assume all responsibility "for the safety and health of personnel and the prevention of [i]ndustrial accidents . . . arising out of the performance of the [s]ervices."

2

Nicholson and Hafiz were journeyman linemen employed by Hampton Tedder.[1]  Hampton Tedder assigned a crew that consisted of Nicholson (the foreman), Hafiz, and a few others to remove a set of electrical cables that connected one SCE BURD switch to another switch.  A BURD switch is a console that sends voltage to other components, such as a transformer or another BURD switch.  It is placed underground in an enclosed space, like this:



[1]     "Journeyman linemen are responsible for tasks including identifying inoperable power cables, digging up and repairing inoperable power cables, climbing power lines, and replacing broken poles. . . .  Most of this work is performed around live power lines . . . ." (*Sanders v. Georgia Power Company* (N.D.Ga. Feb. 17, 2010, Civ. A. No. 1:08-CV-2302-ODE) [2010 WL 11506774, p. 1].)

The job took several days.  On the first day SCE de-energized the BURD switch to allow the Hampton Tedder crew to disconnect the cables from the switch.  After disconnecting the cables, the crew grounded the cables to ensure they were not energized and installed dummy elbows—insulating caps—on the three exposed bushings on the BURD switch where the cables had been connected.[2]  The crew, however, did not remove the disconnected, de-energized cables from the enclosure.  After the crew completed this work, SCE re-energized the BURD switch.

B.     *An Arc Flash Explosion Injures Nicholson and Hafiz*

Nicholson and Hafiz returned a week later to remove the disconnected cables from the enclosure.  When they arrived, Nicholson tested the cables and confirmed they were de-energized.  At some point, while Hafiz was in the enclosure and Nicholson was standing a few feet away, the arc flash occurred.[3]  Hafiz later explained that, while he was standing on the pavement above the enclosure, he bent forward, reached into the enclosure, and began pulling on a cable to loosen it.  He lost his balance, fell into the enclosure, and hit the BURD Switch with his feet.  The arc flash occurred immediately.

---

[2]     "A bushing is the conduit through which electrical current flows."  (*Electric Power Systems International, Inc. v. Zurich American Ins. Co.* (8th Cir. 2018) 880 F.3d 1007, 1009.)

[3]     An arc flash occurs when a short circuit or other electrical event produces conductive gas in the air that has current flowing through it.  The "normally insulating air breaks down and becomes a conductor of electrical current," which results in "very high temperatures close to the arc, erosion and vaporization of metal, and a pressure wave."

4

The arc flash burned Hafiz's face and caused his pants, which were not fire resistant, to catch fire. Nicholson was wearing fire-resistant clothing, but the explosion burned his face and hands. Nicholson, seeing that Hafiz was on fire and running away from the enclosure, chased Hafiz, tackled him, and smothered the flames.

Hampton Tedder investigated the incident and determined the arc flash occurred when two dummy elbows came off their respective bushings. Hafiz suspected he knocked them off with his feet when he fell into the enclosure.

C.      *Nicholson and Hafiz Sue SCE, and SCE Moves for Summary Judgment*

Nicholson, Hafiz, and their spouses sued SCE for negligence (in three causes of action based on different theories: breach of a nondelegable duty, retained control, and failure to warn), violation of Public Utilities Code section 2106,[4] and loss of consortium. Nicholson and Hafiz alleged, among other things, SCE "negligently and carelessly supplied dangerous and faulty equipment" and failed to make sure "the energized parts" of the BURD switch "were covered with suitable protective equipment" and "had adequate protective devices."

SCE moved for summary judgment or in the alternative for summary adjudication on all of the causes of action in the

---

[4]     Public Utilities Code section 2106 provides a private right an action for a person injured by "a[ny] public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done" by any state law or Public Utilities Commission order.

complaint. With respect to the three negligence causes of action, SCE contended Nicholson and Hafiz could not show SCE caused or contributed to their injuries because it was undisputed that "[n]one of [SCE's] electrical distribution equipment malfunctioned or failed in any way to cause or contribute to the arc flash . . . ." SCE relied on a declaration submitted by its expert, John Loud, who reached this conclusion after reviewing Hafiz's testimony and other evidence. SCE also argued *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) barred the negligence causes of action. SCE contended that, as a matter of law, it could delegate all of its duties to maintain safe working conditions to Nicholson's and Hafiz's employer, Hampton Tedder. SCE also argued it did not retain control over the safety conditions at the job site because it was undisputed Hampton Tedder "provided [Nicholson and Hafiz] with all safety equipment to be used" for the job. And SCE contended it did not have a duty to warn Nicholson and Hafiz of any dangers associated with working on the BURD switch because it was undisputed Nicholson and Hafiz were "sophisticated electrician journeyman," each with "over 15 years of experience as electricians." With respect to the cause of action for violation of Public Utilities Code section 2106, SCE contended the regulatory violations Nicholson and Hafiz relied on were allegedly violations of duties SCE owed to its employees, not to employees of independent contractors like Nicholson and Hafiz.

In opposition to the motion Nicholson and Hafiz disputed SCE's assertion that none of its equipment malfunctioned. Nicholson and Hafiz submitted the deposition testimony of Byron Redd, a superintendent of line construction for Hampton Tedder who investigated the incident, and Gary Leatherwood, a project

6

supervisor for SCE who oversaw independent contractors and whom SCE designated as its person most qualified to testify about the equipment involved in the accident. Both Redd and Leatherwood testified that SCE supplies equipment like dummy elbows to Hampton Tedder for use on its systems and that the purpose of a dummy elbow is to cover a high voltage bushing so the bushing is not exposed. Leatherwood also stated a functioning dummy elbow is difficult to remove and should not dislodge if a person bumps into it.

Nicholson and Hafiz also argued, in opposition to SCE's motion for summary adjudication on both the causes of action for negligence and the cause of action for violation of Public Utilities Code section 2106, that certain regulations and Public Utilities Commission orders precluded SCE from delegating its duties to Hampton Tedder. They argued SCE's failure to comply with those rules and orders caused the arc flash and contributed to their injuries. Nicholson and Hafiz also argued SCE retained control over the project and negligently exercised that control by, among other things, furnishing them with defective dummy elbows.[5]

### D. *The Trial Court Grants the Motion*

The trial court ruled SCE met its initial burden on summary judgment because Loud's testimony showed "SCE did not cause or contribute to the arc flash." The court ruled that the opinions of Redd, Hafiz, and Nicholson regarding the arc flash were "speculative" and "conclusory" and that they did not

---

[5] Nicholson and Hafiz did not address SCE's motion for summary adjudication on their negligence cause of action based on failure to warn.

7

"establish their expertise and qualifications to competently opine as experts as to the issue of legal causation." Therefore, the court ruled, Nicholson and Hafiz "failed to present any competent expert evidence to controvert[ ]" Loud's testimony and failed to create a triable issue of fact regarding "whether SCE affirmatively contributed to [Nicholson's and Hafiz's] injuries" or whether "SCE's equipment failed or malfunctioned in any manner." The court granted SCE's motion for summary adjudication on the cause of action for violation of Public Utilities Code section 2106, apparently on the same ground, even though SCE did not argue it was entitled to summary adjudication on that cause of action on the ground SCE did not cause the arc flash.

The court declined to rule on whether SCE had any nondelegable duties. The court did state—without explanation and without discussing whether SCE had met its initial burden—Nicholson and Hafiz failed to create a triable issue of fact regarding "whether SCE negligently retained control of the premises." Finally, the court ruled there was no triable issue of fact regarding the cause of action for loss of consortium because it was based on the other causes of action. Nicholson and Hafiz timely appealed from the ensuing judgment.

## DISCUSSION

A.      *Standard of Review*

A court may grant a motion for summary judgment or summary adjudication "only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"

8

(*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179; see Code Civ. Proc, § 437c, subd. (c); *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 582.) A defendant moving for summary judgment "'''"bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action."'''" (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705; accord, *Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 122.)

Where, as here, a defendant moves for summary adjudication on a cause of action for which the plaintiff has the burden of proof at trial, the defendant "must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of the cause of action.  [Citation.]  Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action . . . .'" (*Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 702-703; see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-854.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850; accord, *Welborne v. Ryman-Carroll Foundation* (2018) 22 Cal.App.5th 719, 724.)

"We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of

9

law." (*Mattei v. Corporate Management Solutions, Inc.*, *supra*, 52 Cal.App.5th at p. 122; see *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) We "'liberally constru[e] the evidence in favor of the party opposing the motion and resolv[e] all doubts about the evidence in favor of the opponent.'" (*Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 182; see *Regents*, at p. 618.)

B.      *The Trial Court Erred in Granting SCE's Motion for Summary Adjudication on the Causes of Action for Negligence*

The trial court ruled there were no triable issues of material fact regarding whether SCE caused the arc flash or retained control over the job. Both rulings were erroneous. SCE did not meet its initial burden on either issue, and even if it had, Nicholson and Hafiz created triable issues of material fact on both.

1.      *SCE Did Not Meet Its Initial Burden To Show It Did Not Cause the Arc Flash*

To prove negligence, "a plaintiff must allege the wrongful act was a direct and proximate cause of the injury." (*Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 68; see *Regents of the University of California v. Superior Court*, *supra*, 4 Cal.5th at pp. 618, 630-631.) SCE sought to meet its moving burden on summary judgment by negating the causation element of the causes of action for negligence; that is, by showing it was undisputed that nothing SCE did caused the arc flash (and therefore contributed to Nicholson's and Hafiz's injuries).

As an initial matter, even if SCE had shown it did not do anything to cause the arc flash, SCE would not have been

10

entitled to summary adjudication on the negligence causes of action as a matter of law. Although Nicholson and Hafiz alleged SCE was negligent in supplying defective equipment and failing to prevent the arc flash, they also alleged SCE was negligent because it violated various applicable government regulations and orders that, had SCE complied with them, would have mitigated Nicholson's and Hafiz's injuries. For example, Nicholson and Hafiz alleged SCE breached duties to provide them with suitable protective clothing for the job and to ensure an employee with first aid training was present at the jobsite. That SCE did not cause the arc flash would not show SCE did not contribute to Nicholson's and Hafiz's injuries by breaching these alleged duties. For this reason alone, the trial court erred in granting summary adjudication on the negligence causes of action. (See *Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1165 [defendant failed to carry his initial burden on summary adjudication by failing to address all theories of liability]; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 110 ["defendants failed to meet their burden on summary judgment because their motion failed to address all of the allegations of [the] second amended complaint"]; *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 717 ["As the party moving for summary judgment, [the defendant] had the burden to show that it was entitled to judgment with respect to all theories of liability asserted by [the plaintiff]."].)

SCE also failed to make a prima facie showing that nothing it did caused the arc flash. (See *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850 [party moving for summary adjudication "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of

material fact"].)  Loud, SCE's expert, opined that "[n]one of the equipment involved in this incident malfunctioned or failed in any way to cause this arc-flash incident."  From this isolated statement, it looks as if SCE met its burden to show no triable issues of material fact on causation.  But looks, or at least first glances, can deceive.  When Loud stated that none of SCE's equipment malfunctioned, he was not talking about the dummy elbows, the "dangerous and faulty equipment" SCE allegedly furnished to Nicholson and Hafiz.  Loud stated that "simply removing the dummy elbows" from energized bushings "will not cause an arc-flash incident—nothing will happen."  As Loud explained, "[t]here will be exposed energized metal parts . . . at the center of each bushing, but air is a good insulator and no current will be conducted."  Loud went on to state that the arc flash occurred after Hafiz knocked one of the dummy elbows off the bushings, when the bonding wire of the elbow "came within ¼ inch of [the] exposed bushing."  According to Loud, "[a]ll similar energized bushings would experience such an arc flash if subjected to similar conditions."  Therefore, in Loud's opinion, there was no malfunction "*at the time* that [the] exposed energized bushing was contacted by [the] grounded wire that initiated this arc-flash . . . ."  (Emphasis added.)

Thus, at best, all Loud stated in his declaration was that, after Hafiz knocked the dummy elbows off the bushings, the BURD switch operated as intended; i.e., after the dummy elbows dislodged and the bushings were exposed, nothing (additional) malfunctioned.  (See *Innovative Business Partnerships, Inc. v. Inland Counties Regional Center, Inc.* (2011) 194 Cal.App.4th 623, 628 [when reviewing whether the moving party met its initial burden, "we strictly scrutinize the moving party's

papers"].) That may be true, but it doesn't get SCE very far. Nicholson and Hafiz's negligence causes of action were not limited to the BURD switch or other equipment malfunctioning at the exact moment the arc flash occurred. And as Nicholson and Hafiz point out in their opening brief, Loud "did not explain how the elbow[s] could be dislodged without an equipment malfunction." Loud, who never physically examined the dummy elbows, did not discuss whether the elbows functioned properly or whether they should have stayed on the bushings when Hafiz kicked them. Because SCE did not make a prima facie showing that none of its equipment caused the arc flash, the burden never shifted to Nicholson and Hafiz to raise a triable issue of material fact.

       2.    *SCE Also Did Not Meet Its Burden To Show It Did Not Retain Control of the Job*

As discussed, the trial court also ruled (unattached to a discussion of any particular cause of action, but probably in connection with the negligence cause of action based on retained control) that Nicholson and Hafiz failed to create a triable issue of material fact regarding whether SCE retained control of the job premises. The trial court erred again; SCE did not meet its burden on this issue either.

"[A] hirer is liable to an employee of an independent contractor insofar as the hirer's provision of unsafe equipment affirmatively contributes to the employee's injury." (*McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 222.) Nicholson and Hafiz alleged SCE provided them dangerous or defective tools and equipment that caused the arc flash; in particular, the dummy elbows.

13

To meet its moving burden, SCE attempted to show that Hampton Tedder provided Nicholson and Hafiz "with all safety equipment" to use at the jobsite. SCE relied on the deposition testimony of Leatherwood and Sean Holmes, Hampton Tedder's safety coordinator. But neither witness's testimony showed that SCE did not provide any tools or equipment to Nicholson and Hafiz. Leatherwood testified SCE, not Hampton Tedder, generally provided the materials a worker needed to perform a job for SCE, including "elbow connectors." Leatherwood did state that contractors must provide (other) "safety equipment," but Nicholson and Hafiz did not allege SCE only provided defective "safety equipment" (as Leatherwood used the term); they alleged that SCE provided dangerous tools and equipment. (See *Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.* (2018) 24 Cal.App.5th 153, 169 ["The pleadings determine the issues to be addressed by a summary judgment motion."].) Nor did Holmes's testimony negate Nicholson and Hafiz's allegation. Holmes did state Hampton Tedder provided employees with personal protective equipment, but he did not state that SCE did not provide other types of tools and equipment for a job.

> 3.  *In Any Event, Nicholson and Hafiz Created Triable Issues of Material Fact on Causation and Retained Control*

Even if SCE had met its initial burden to show that none of its equipment malfunctioned and that it did not supply any tools and equipment used for the job, Nicholson and Hafiz created triable issues of fact on both issues. As discussed, Leatherwood testified at his deposition SCE generally provided things like elbow connectors to use on its electrical equipment. And when

14

counsel asked Redd whether the Hampton Tedder crew received the dummy elbows installed on the BURD switch from SCE, Redd responded that SCE supplied all materials used on SCE systems.

Turning to whether the dummy elbows malfunctioned, Nicholson and Hafiz created triable issues of material fact regarding whether the elbows failed to perform as expected. A plaintiff "may prove the existence of a defect by showing that 'the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.'" (*Demara v. The Raymond Corp.* (2017) 13 Cal.App.5th 545, 553-554; see *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 432.)[6] There was no dispute the purpose of a dummy elbow is to cover an energized bushing. Redd and Leatherwood both stated this in their deposition testimony, and Loud confirmed a dummy elbow is a cap used to insulate an energized bushing. Leatherwood also testified a functioning dummy elbow is very difficult to remove and should not come off if bumped or hit with a small amount of force.

Nicholson and Hafiz testified the Hampton Tedder crew installed the dummy elbows on the bushings the first day of the job. Hafiz testified that, before he fell into the enclosure, all of the dummy elbows were still on the bushings and that, when he

---

[6] As stated, in *McKown v. Wal-Mart Stores, Inc., supra*, 27 Cal.4th 219 the Supreme Court held a hirer is liable to an employee of an independent contractor if the hirer provides "unsafe equipment" that contributes to the employee's injury. (*Id.* at p. 222.) SCE argues the employee must show a product defect. Although it is not clear this is the standard under *McKown*, we assume, without deciding, Nicholson and Hafiz had to show a product defect.

fell into the enclosure, his feet hit the top of the BURD switch (where the elbows were). Loud agreed Hafiz most likely knocked off a dummy elbow with his foot immediately before the arc flash occurred. And both Hampton Tedder's investigative report and Loud in his declaration explained the arc flash occurred because the dummy elbows dislodged from the bushings. In light of this evidence, a factfinder could reasonably find that the dummy elbow failed to perform as reasonable users of the elbows, like Redd and Leatherwood, would expect and that SCE contributed to the arc flash by providing the defective elbow. (See *Welborne v. Ryman-Carroll Foundation, supra,* 22 Cal.App.5th at p. 724 [triable issue of material fact exists if "'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion'"]; *Johnson v. United States Steel Corp.* (2015) 240 Cal.App.4th 22, 32 ["Where a product is in such 'specialized use' that the general public is not familiar with its safety characteristics, a manufacturer may still be liable if 'the safe performance of the product fell below the reasonable, widely shared minimum expectations of those who do use it.'"].)

The trial court ruled that the testimony of Nicholson, Hafiz, and Redd regarding the cause of the arc flash was "speculative" and "conclusory" and that, even though according to SCE Nicholson and Hafiz were "sophisticated" electrical workers, they failed to "establish their expertise and qualifications to competently opine as experts as to the issue of legal causation." It is not clear which part of their testimony the trial court found speculative and conclusory. But to the extent the court excluded Nicholson's and Hafiz's testimony that the Hampton Tedder crew installed dummy elbows or Hafiz's testimony that the elbows were still installed when he fell into the enclosure and kicked the

16

BURD switch, the trial court erred.[7]  The testimony of both witnesses was based on their personal observations.  (See Evid. Code, § 702; *People v. Lewis* (2001) 26 Cal.4th 334, 356 [witnesses may testify where they have "personal knowledge of the subject of the testimony, i.e., 'a present recollection of an impression derived from the exercise of the witness' own senses'"].)  Moreover, Loud confirmed Hafiz likely kicked the dummy elbows off, causing the sequence of events that led to the arc flash.  The cause of the arc flash was not in dispute for purposes of the motion for summary adjudication.

To the extent the trial court excluded Redd's (or Leatherwood's)[8] testimony regarding the intended function of the dummy elbows, the trial court also erred.  "'A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates.'"  (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1319; see Evid. Code,

---

[7]  The California Supreme Court has not decided whether a trial court's evidentiary rulings on a motion for summary judgment are reviewed de novo or for an abuse of discretion.  (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [declining to decide the issue]; *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368 ["[c]ourts are split regarding the proper standard of review for the trial court's evidentiary rulings in connection with motions for . . . summary adjudication"].)  But even under the more deferential abuse of discretion standard, the trial court erred.

[8]  The trial court did not explicitly rule that Leatherwood's testimony was also speculative or conclusory, but it does not appear the court considered his testimony.

§ 720, subd. (a).) "The determinative factor is whether the expert 'has sufficient skill or experience in the field so that his [or her] testimony would be likely to assist the jury in the search for the truth.'" (*Chavez*, at p. 1319.)

Both Redd and Leatherwood had sufficient experience working as electrical lineman to give an opinion on how a dummy elbow should function. Redd had over 20 years of experience as a lineman, troubleman,[9] and distribution operation center supervisor. His job included overseeing safety for SCE line construction crews. Leatherwood had worked for SCE for over 30 years, including as a journeyman lineman. Leatherwood's job primarily involved overseeing the electrical work of contractors. Redd and Leatherwood gave opinions about how a familiar, fairly uncomplicated piece of electrical equipment should function. They had sufficient skill and experience to give such an opinion. (See *Grafilo v. Soorani* (2019) 41 Cal.App.5th 497, 510 ['"The competency of an expert "is in every case a relative one, i.e. relative to the topic about which the person is asked to make his statement."'"]; *ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 294 ['"Expertise . . . "is relative to the subject," and is not subject to rigid classification according to

---

[9] Troublemen are a utility company's first responders, often sent to assess whether there are any hazards with power lines. "The title is apt: a troubleman's job is to answer customer complaints, check on downed wires, car pole accidents, structure fires, etc., as well as doing 'high voltage switching, clearing lines for crews to work on, . . . do the turn-ons and turn-offs when people move . . . maintain the substations, keep the voltage regulation within the proper limits, and usually anything else anybody can think of.'" (*Fong v. Pacific Gas & Electric Co.* (1988) 199 Cal.App.3d 30, 33, fn. 3.)

formal education or certification.'"]; *People v. King* (1968) 266 Cal.App.2d 437, 443 ["'any person who has special knowledge, skill or experience in any occupation, trade or craft may be qualified as an expert in his field'"]; see, e.g., *Mize v. Atchison, T. & S. F. Ry. Co.* (1975) 46 Cal.App.3d 436, 455 [accident engine foreman who had seen multiple railroad derailments could opine on the cause of a derailment]; *Hyman v. Gordon* (1973) 35 Cal.App.3d 769, 774 [experienced firefighter could give an opinion on whether the design of a water heater in a home constituted a fire hazard, even though he was "not a plumbing or building expert"].)[10]

C. *The Trial Court Erred in Granting SCE's Motion for Summary Adjudication on the Cause of Action for Violation of Public Utilities Code Section 2106*

The trial court granted summary adjudication on the cause of action for violation of Public Utilities Code section 2106 based on its mistaken ruling SCE had shown there were no triable

---

[10] Although SCE argues several of Nicholson and Hafiz's theories of liability are barred by the *Privette* doctrine, SCE makes this argument only in response to arguments by Nicholson and Hafiz in their opening brief. SCE does not argue we should affirm the judgment based on *Privette*, a ground the trial court did not rely on. (Cf. *Wolf v. Weber* (2020) 52 Cal.App.5th 406, 410 [we may "affirm the trial court's decision if it is correct on any ground the parties had an adequate opportunity to address in the trial court, regardless of the reasons the trial court gave"].) Indeed, SCE admits on appeal that it owed some duties to Nicholson and Hafiz, including the duty "to provide non-defective elbows and to perform an inspection [of the BURD switch] that fell within the standard of care," and that "the *Privette* doctrine does not change the analysis" and is "besides the point."

issues of material fact regarding whether SCE caused the arc flash.  As discussed, the latter ruling was erroneous; therefore, the former ruling was too.  In addition, SCE did not argue it was entitled to summary adjudication on the cause of action for violation of Public Utilities Code section 2106 because Nicholson and Hafiz could not show causation; SCE argued it was entitled summary adjudication because the regulations and orders Nicholson and Hafiz claimed SCE violated applied to the employees of SCE, not to employees of independent contractors.  And, as with their negligence causes of action, Nicholson and Hafiz did not allege that, by violating Public Utilities Code section 2106, SCE only contributed to their injuries by causing the arc flash; they also alleged SCE failed to comply with regulations and orders that would have mitigated their injuries after the arc flash occurred.

## DISPOSITION

The judgment is reversed.  Nicholson and Hafiz are to recover their costs on appeal.


SEGAL, J.

We concur:


PERLUSS, P. J.          FEUER, J.

20