Filed 9/13/24  Soloway v. Prima Medical Group CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| ELIZABETH SOLOWAY, as Personal Representative, etc.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PRIMA MEDICAL GROUP et al.,<br><br>    Defendants and Respondents. | A165639<br><br>(San Francisco City & County Super. Ct. No. CGC-20-584965) |

As counsel for defendants Prima Medical Group and Dr. Stahl finished his closing argument, a juror blurted, "I agree."  After plaintiff Hill filed a motion to discharge the juror, the trial court questioned the juror who affirmed that she followed its instructions and was deliberating with an open mind.  The court denied Hill's motion as well as Hill's subsequent motion for a new trial after the jury returned a 9–3 verdict in favor of defendants.  We affirm.

## BACKGROUND

### I.  Underlying Action and Motion to Remove Juror

Hill filed a complaint against defendants alleging that Dr. Stahl negligently clipped and cut the wrong artery and vein during a colectomy, causing her further harm.  Dr. Stahl denied any negligence.

1

The case went to a jury trial. Both sides presented evidence and extensive expert testimony disputing the factual allegations. When the evidence concluded, Hill's counsel gave a closing argument, reserving time for rebuttal. (See Code Civ. Proc., § 607.)[1] Defendants' counsel then made his closing argument. The trial transcript captures the conclusion of his statement as: "And when we talk about the scales of justice we talk about justice — I always get choked up about this part. But to do your job in this case, to do justice, I submit to you is to render a verdict in favor of Dr. Stahl. Thank you very much. Thank you, Your [sic] Honor." After a lunch break, Hill's counsel delivered rebuttal argument, and then the trial court gave the jury its final instructions and sent it to deliberate. It deliberated for about an hour and a half before the end of the day.

The next morning, Hill submitted a written motion to remove Juror No. 5 for misconduct.[2] In support of the motion, Hill's counsel and a paralegal each provided declarations attesting that, as defendants' counsel "was finishing his final argument and said words to the effect that the Defendants should prevail," Juror No. 5 said, " 'I agree.' " Citing section 611 and the Judicial Council of California Civil Jury Instruction (CACI) No. 100, Hill argued the statement evidenced that Juror No. 5 "did not have an open mind throughout trial"; " 'formed and expressed an opinion about the case' while the case was still proceeding"; and "had decided on her verdict before she had 'discussed [the case] thoroughly with [her] fellow jurors.' "

---

[1] All further statutory references are to Code of Civil Procedure unless otherwise indicated.

[2] The prior evening, Hill's counsel gave notice to defendants' counsel that Hill intended to bring a motion and emailed the trial court to request a hearing.

The trial court held a hearing on the motion. The court accepted the truth of Hill's allegations — i.e., that Juror No. 5 had made the statement — but it was disinclined to accept the inference that this alone proved Juror No. 5 had made up her mind prior to deliberations. Consequently, the court called in Juror No. 5 for questioning with counsel present.

In its questioning, the trial court asked Juror No. 5 whether she had heard and followed its instructions and admonitions to keep an open mind throughout trial. The court explicitly did not ask her whether she had expressed agreement with defendants' counsel.[3] Its questions were: "Did you hear my instructions on [not making a decision until you have had an opportunity to deliberate with all the jurors]?"; "do you feel that you have followed those instructions?"; "do you feel that you can continue to follow those instructions?"; "do you feel that during your deliberations so far that you have approached the deliberations with an open mind?"; and "I just need to make sure that you did not go into jury deliberations with your mind made up — that is true?" Juror No. 5 answered affirmatively to each question.

The hearing resumed after Juror No. 5 left the room. The trial court rejected defendants' suggestions that Hill's motion was untimely, and it noted that "it is inappropriate" for a juror to express an opinion. Nonetheless, the court concluded that removal was not justified because, "assuming [Juror No. 5] did express the opinion, . . . she was very clear that she has abided by the Court's instructions; that she is acting consistently with the Court's instructions and that she is deliberating consistently with the Court's instructions." The court expounded that in "[its] experience . . . , people reach

---

[3] Despite the trial court's intentions, the transcript suggests the juror did acknowledge making the statement.

opinions about a case, you know, 10, 20 times during the life of that trial and it goes back and forth." Accordingly, the court denied the motion.

That afternoon the jury delivered a 9–3 defense verdict. Hill requested polling of the jury. When asked if the verdict was her true and accurate verdict, Juror No. 5 responded, "Absolutely." The trial court excused the jury shortly thereafter.

## II. Motion for New Trial

Hill timely filed a motion for a new trial. Hill submitted affidavits from four individuals — including that of a fellow juror — who heard Juror No. 5 state, "I agree" following the concluding sentence of defendants' counsel's closing argument. All four of the declarations narrowly attested to the statement and its timing.[4] Beyond noting that Juror No. 5 answered " '[a]bsolutely' " when polled after the verdict, Hill argued the statement during closing argument alone constituted misconduct and "[u]nambiguous[ly]" demonstrated that Juror No. 5 had prejudged the case, creating a presumption of prejudice. Because the defense verdict was 9–3, Hill contended the presence of a single biased juror constituted actual prejudice. Hill further argued that the trial court erred by seeking Juror No. 5's representations as to whether she had followed the court's instructions or had prejudged the case.

Defendants opposed the motion. They chiefly argued that Juror No. 5's comment did not establish misconduct and that she had credibly affirmed that she abided by the court's instructions. In support of their opposition, defendants offered the challenged juror's declaration, in which she admitted,

---

[4] Except perhaps Hill's counsel's technical consultant's view that the challenged juror's tone was "impassioned."

4

*inter alia*, that she had said, "I agree" at the conclusion of the defense's closing argument.

In reply, Hill maintained that the statement established actual bias and was prejudicial in light of the close verdict. Hill objected to the entirety of Juror No. 5's declaration other than her admission that she said, "I agree." Hill also objected to consideration of the transcript of the trial court's questioning of Juror No. 5 on the grounds that it was inappropriate to rely on a juror's representations as to her subjective thought processes.

At the hearing on the motion for a new trial, the trial court overruled Hill's objections to the transcript but granted her objections to Juror No. 5's declaration. The court then observed "what [it] saw as . . . aggressiveness" and "vehemence" in Juror No. 5's polling answer that the verdict was "absolutely" hers, causing the court to develop "the sense that [Juror No. 5] had become quite embroiled in the case in a way that [the court] may not have completely understood when [it] was asking her questions." The court therefore conceded it was unsure whether to grant a new trial.

During the hearing, Hill sought a "bright line" rule that, prior to a case's submission to the jury, a juror's statement of opinion regarding the case establishes a presumption of bias. In contrast, defendants urged the trial court to consider that since the statement was made after all the evidence had been presented and argued that the statement did not demonstrate prejudgment of the case. Defendants further argued Juror No. 5's polling answer has no bearing on the issue.

The trial court took the matter under submission. In a short-written order, the court summarily denied the motion. Hill appealed.

5

## DISCUSSION

### I. Legal Standards

An impartial jury in civil cases is a cornerstone of justice. (U.S. Const., 7th & 14th Amends.; Cal. Const., art. I, § 16; see *McDonald v. S. Pac. Transp. Co.* (1999) 71 Cal.App.4th 256, 266 ["civil litigants too are constitutionally entitled to a fair trial before an unbiased jury"].) To preserve a jury's impartiality, trial courts admonish jurors at the outset of every case and at every recess "that it is their duty not to form or express an opinion thereon until the case is finally submitted to them." (§ 611; CACI No. 100 [preliminary admonition].)

Credible allegations that a juror decided the case before it was submitted to the jury require an investigation into the alleged misconduct. (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 70 (*Allen and Johnson*).) How a court conducts such an investigation is reviewed for abuse of discretion. (*People v. Fuiava* (2012) 53 Cal.4th 622, 710, 712 (*Fuiava*).)

Juror misconduct raises a presumption of prejudice, but "we determine whether an individual verdict must be reversed for jury misconduct by applying a substantial likelihood test." (*In re Boyette* (2013) 56 Cal.4th 866, 889.) On review, we defer to the trial court's credibility determinations and factual findings supported by substantial evidence. (*People v. Nesler* (1997) 16 Cal.4th 561, 582 (*Nesler*).) But we exercise our independent judgment to determine whether "the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances" rebuts the presumption — "i.e., no *substantial likelihood* that one or more jurors were actually biased against the defendant." (*In re Boyette*, p. 890; see also *Nesler*, pp. 582–583.)

6

"Actual bias" is a "state of mind" barring a juror from deliberating impartially. (§ 225, subd. (b)(1)(C).) A juror who is actually biased must be dismissed. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 483 (*Mora and Rangel*).) An uncovering of a juror's actual bias after trial and verdict warrants a new trial. (*Nesler, supra,* 16 Cal.4th at p. 581.)

## II. No Reversible Error in Denying Order to Discharge Juror or Denying Motion for New Trial

### A. No Abuse of Discussion in Investigation

We begin by reviewing the trial court's investigation into Hill's allegation of juror misconduct, "a course that is fraught with the risk of reversible error at each fork in the road." (*Fuiava, supra,* 53 Cal.4th at p. 710.) In navigating between the Scylla of a cursory investigation and the Charybdis of invading the sanctity of the jury's deliberations, we find no abuse in the court's exercise of its discretion. (*Id.* at pp. 710, 712.)

The trial court held a hearing at the first opportunity following Hill's filing of her motion to remove Juror No. 5.[5] Based on the submitted declarations and counsel's representations, the court accepted the allegations as true — i.e., that Juror No. 5 exclaimed "I agree" as the defense counsel finished his closing argument. It accordingly interviewed Juror No. 5.

Contrary to Hill's assertion that the trial court should have summarily dismissed Juror No. 5, dismissing Juror No. 5 without further investigating the misconduct would have constituted an abuse of discretion. (See *Allen and Johnson, supra,* 53 Cal.4th at p. 70; *Mora and Rangel, supra,* 5 Cal.5th at p. 483 ["A court must hold a hearing if a juror's ability to perform his or her duty is called into question"].) And "the trial court reasonably focused its

---

[5] We observe that there is no dispute that the trial court provided the preliminary admonition and regular instruction to the jurors to keep an open mind and not discuss or prejudge the case prior to deliberations.

inquiry on the juror whose ability to serve was in doubt." (*Fuiava*, *supra*, 53 Cal.4th at p. 712; see *Shanks v. Department of Transportation* (2017) 9 Cal.App.5th 543, 553 (*Shanks*) [courts "should interview the alleged problem juror to obtain his or her response"].)

Nor did the trial court abuse its discretion in asking Juror No. 5 whether she had followed its instructions and could continue to deliberate with an open mind. Indeed, this is the exact approach our Supreme Court endorsed in *Fuiava*, a case concerning personal bias. (*Fuiava*, *supra*, 53 Cal.4th at pp. 712–713; *People v. Merriman* (2014) 60 Cal.4th 1, 92 (*Merriman*) [asking juror "whether she went into deliberations with an open mind" despite her statement that "she probably had made up her mind before deliberations" and asking juror "whether [she] had prejudged the case" due to "her purported statement . . . that defendant 'will be put away' "]; cf. *Allen and Johnson*, *supra*, 53 Cal.4th at p. 70 [no abuse of discretion where "the court asked why [fellow juror] believed Juror No. 11 had prejudged the case"].) Tellingly, Hill's counsel, who was present throughout the inquiry, did not object to the trial court's questioning during the hearing or request any additional investigation.

Hill misconstrues Evidence Code section 1150, subdivision (a), which bars evidence of a juror's mental thought processes or state of mind to attack or support a jury verdict. The trial court did not improperly inquire "upon the content of the [jury] deliberations," and it properly "cease[d]" its questioning once it was "satisfied that [Juror No. 5 was] participating in deliberations and ha[d] not expressed an intention to disregard the court's instructions or otherwise committed misconduct, and that no other proper ground for discharge exist[ed]." (*People v. Cleveland* (2001) 25 Cal.4th 466, 485; see also *Allen and Johnson*, *supra*, 53 Cal.4th at p. 75 ["this case is not

8

governed by Evidence Code section 1150, [but] its underlying policy provides guidance"].)[6]

In sum, the inquiry was reasonable. Thus, the court did not abuse its discretion, especially given the court's obligation to not unduly disrupt the jury's deliberations. (See *Fuiava*, *supra*, 53 Cal.4th at p. 712; *Allen and Johnson*, *supra*, 53 Cal.4th at p. 70 ["the content of its questions appears measured"].)[7]

## B. Record Does Not Demonstrate Substantial Likelihood That Juror Was Actually Biased

We next turn to Hill's contention that Juror No. 5's errant outburst established actual bias. Given the trial court's credibility finding, the nature of the remark, the context in which it was made, and the dearth of any other evidence demonstrating prejudgment, we disagree.

As mentioned above, actual bias "is a state of mind rather than some specific course of conduct." (*Mora and Rangel*, *supra*, 5 Cal.5th at p. 485.) Cases where a statement, as opposed to an overt act, is claimed to evidence actual bias represent the "more difficult" cases involving juror misconduct. (*Grobeson v. City of Los Angeles* (2010) 190 Cal.App.4th 778, 787 (*Grobeson*).) Indeed, courts must not improperly discharge a " 'qualified and acting juror

---

[6] Hill's position that such limited questions are bound to fall short of unrooting misconduct abnegates established case law. (E.g., *People v. Cleveland*, *supra*, 25 Cal.4th at p. 485.) Any comparison to the "liberal and probing" voir dire examination permitted during jury selection under section 222.5, subdivision (b)(1), is therefore inapplicable. To the extent Hill now asserts that Juror No. 5 "dissembl[ed]" her bias during jury selection, she fails to proffer any evidence.

[7] Hill's reliance on *Andrews v. County of Orange* (1982) 130 Cal.App.3d 944, disapproved on other grounds by *Nesler*, *supra*, 16 Cal.4th at p. 582, fn. 5, is misplaced. Here, the trial court did not rely on any explanation from Juror No. 5 "concerning [her] state of mind when [s]he made the utterance." (*Id.* at p. 958.)

9

who, by some act or remark made during the trial, has given the impression that he favors one side or the other.' " (*Shanks, supra*, 9 Cal.App.5th at p. 557.) "The reality that a juror may hold an opinion at the outset of deliberations is . . . reflective of human nature." (*Allen and Johnson, supra*, 53 Cal.4th at p. 75.) Accordingly, "[i]n assessing whether [a biased] state of mind is present or not, the law makes room for a juror's humanity . . ." and asks whether "a juror is able to set aside impressions and opinions to render a verdict based on the evidence presented in court." (*Mora and Rangel*, at p. 485.)

That is what the trial court did here, and we accept its finding that the juror credibly attested to her ability to be impartial. (E.g., *Mora and Rangel, supra*, 5 Cal.5th at p. 485 [affirming decision to *not* discharge juror who improperly communicated with a nonjuror where juror "attested to her ability to impartially evaluate the evidence" and the "record reveal[ed] no further conduct on [the juror's] part suggesting latent bias"].)[8] The line for actual bias is not crossed when a juror forms an opinion, so long as the juror can "subject any preliminary opinion to rational and collegial scrutiny before coming to a final determination." (*Allen and Johnson, supra*, 53 Cal.4th at p. 75.)

We reject Hill's contention that Juror No. 5's comment was an "unadorned statement" conclusively establishing that she had prejudged the case. Indeed, the circumstances are less egregious than those in *Merriman* where the Supreme Court affirmed that the presumption of prejudice arising

---

[8] Hill's authorities are inapposite. Here, despite her errant expression of agreement with the defense argument, Juror No. 5 credibly affirmed that she had and would continue to keep an open mind. She did not disavow previous testimony by a "clear and unequivocal admission," as was the case in *King v. Andersen* (1966) 242 Cal.App.2d 606, 610 and *Thompson* v. *Williams* (1989) 211 Cal.App.3d 566, 573–574.

10

from misconduct had been rebutted.  (*Merriman*, *supra*, 60 Cal.4th at p. 98.)
There, a juror committed "serious misconduct" by discussing the case with
the sheriff's deputy — who was the juror's daughter's sister-in-law and by
"predicting that death would be imposed."  (*Id.* at pp. 98, 89, 99.)  When
asked by defense counsel whether she had made up her mind prior to
deliberations, the juror "responded that it 'probably [was] true.' "  (*Id.* at
p. 100.)  But in response to the trial court's further questioning, the juror
stated she had not prematurely prejudged the case and thoughtfully
deliberated with her fellow jurors despite the "overwhelming" evidence.
(*Ibid.*)  The Supreme Court refused to reweigh the trial court's credibility
determination, explaining "[t]he [trial] court was entitled to credit [the
juror's] more precise and fully developed description of her state of mind over
her earlier, equivocal responses" and her "off-the-cuff" remark to the sheriff's
deputy.  (*Id.* at pp. 100, 99; see also *Allen and Johnson*, *supra*, 53 Cal.4th at
pp. 66, 73, 79 [reversing discharge of a juror who stated during deliberations
that " '[w]hen the prosecution rested, she didn't have a case' " because the
comment "was subject to some interpretation" and "did not establish that [the
juror] ignored further evidence, argument, instructions, or the views of other
jurors"].)

The cases on which Hill relies involve statements in which jurors
unequivocally stated they had made up their minds.  (*Grobeson*, *supra*, 190
Cal.App.4th at p. 784 [in the middle of trial juror said he had " ' "made up
[his] mind already" ' "  and was " ' "not going to listen to the rest of the stupid
argument" ' "]; *Deward v. Clough* (1966) 245 Cal.App.2d 439, 443–444 [juror's
statement that " ' "[w]e could bring in a verdict already" ' " established
prejudgment "[a]bsent any counteraffidavit"].)  Such remarks required
"neither interpretation nor the drawing of inferences."  (*Grobeson*, at p. 794.)

11

Here, in contrast, Juror's No. 5's uninhibited utterance of agreement with the defense's argument, without more, is at best ambiguous. "The trial court was not entitled to resolve the ambiguity by presuming the worst of the juror." (*Shanks*, *supra*, 9 Cal.App.5th at p. 554; see also *People v. Bowers* (2001) 87 Cal.App.4th 722, 729 [same].) We will therefore not infer that her statement betrays Juror's No. 5's prejudgment of the case. (See *People v. Jones* (2020) 50 Cal.App.5th 694, 702 [" 'the ambiguity [in the juror's statement] was never resolved by proof, and the court was not entitled to do so by presuming the worst' "].)

The timing of Juror No. 5's statement — i.e., before Hill's rebuttal argument — is not per se prejudicial. (See *Bandana Trading Co., Inc. v. Quality Infusion Care, Inc.* (2008) 164 Cal.App.4th 1440, 1446 (*Bandana*) [juror's clapping during rebuttal argument was "tantamount to the formation of an opinion" and "technical misconduct," but not prejudicial because the "momentary display occurred after all the evidence had been heard and the closing arguments were nearly completed"].) Here, Juror No. 5's statement was momentary, occurred after all the evidence had been heard and near the end of closing arguments, and there is no further evidence of bias or impact on other jurors. (See *ibid.*) This timing does distinguish the instant circumstances from those in *Allen and Johnson,* where the statement was made during deliberations. (*Allen and Johnson*, *supra*, 53 Cal.4th at p. 73.) But, as in *Allen and Johnson* and *Bandana* and unlike in *Grobeson*, the statement came after the submission of all the evidence. (Compare *Allen and Johnson*, p. 73 with *Grobeson, supra*, Cal.App.4th at p. 784.) As the trial court explained, jurors regularly form and shift their opinions throughout a trial, and Hill's rebuttal argument may have caused Juror No. 5 to reconsider

12

whatever she found persuasive about the defense's argument — as no doubt a rebuttal argument is intended to do.

Moreover, the record does not demonstrate that the juror "refused to listen to all of the evidence, began deliberations with a closed mind, or declined to deliberate." (*Allen and Johnson*, *supra*, 53 Cal.4th at p. 73.) If anything, it suggests the opposite — the declaration of another juror that merely recounts hearing the statement omits mention of any other conduct corroborating actual bias.

The other additional evidence that Hill submitted in support of her motion for a new trial does not tip the scales. It merely consisted of additional redundant declarations as well as Juror No. 5's affirmation that the verdict reflected her true and accurate verdict. We decline to read into the purported "tone" of Juror No. 5's statements. (Cf. *Allen and Johnson*, *supra*, 53 Cal.4th at p. 70 ["the court's tone of voice is not revealed" from the transcript].) If we were to speculate, there is just as much reason to concur with Hill's counsel's original observation following the court's questioning of Juror No. 5 that "she [may be] understandably . . . defensive." We decline to do so.

In sum, based on record and considering the totality of the circumstances, we find that Juror No. 5 was not a biased juror. (See *In re Boyette*, *supra*, 56 Cal.4th at pp. 889–890.) Because Hill asserts no other error, the trial court did not abuse its discretion in denying Hill's motion to discharge Juror No. 5 or in denying the motion for a new trial. (*People v. Thompson* (2010) 49 Cal.4th 79, 140.)

## DISPOSITION

The judgment is affirmed. Defendants are entitled to costs. (Cal. Rules of Court, rules 8.278(a)(1), (2).)

13

DOUGLAS, J.*

We concur:

BROWN, P.J.
STREETER, J.

*Soloway v. Prima Medical Group* (A165639)

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.